UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GUY MATTIA,

                    Petitioner,

-against-

BRIAN FISHER, Commissioner, New York
Dept. of Corrections and LUIS MARSHALL,
Superintendent, Sing Sing Correctional Facility,

                    Respondents.
---------------------------------------------------------X

NOT FOR PUBLICATION
MEMORANDUM AND
ORDER

07-CV-899 (CBA)(JA)

AMON, United States District Judge:

Petitioner Guy Mattia, through counsel, brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 11, 2000, Mattia was found guilty of Murder in the Second Degree after a jury trial. He was sentenced to an indeterminate sentence of twenty-two years to life on November 2, 2000, and is currently incarcerated pursuant to the judgment of conviction. Mattia seeks a writ of habeas corpus on the grounds that his constitutional rights were violated by his trial counsel's ineffective assistance at trial. This Court referred the petition to the Hon. Joan Azrack, United States Magistrate Judge, for a Report and Recommendation ("R&R"). Magistrate Judge Azrack issued an R&R on April 30, 2008, recommending that Mattia's petition be denied and that no certificate of appealability issue pursuant to 28 U.S.C. § 2253(c). Mattia, through counsel, filed timely objections with regard to only four of the seven claims on which Magistrate Judge Azrack reached the merits. For the reasons that follow, the Court adopts the Magistrate's recommendation that the petition be denied and that no certificate of appealability issue as the opinion of the Court.

## I. The R&R and Objections

This Court assumes familiarity with the facts and procedural posture of the case, as set forth in Magistrate Judge Azrack's R&R. (R&R at pp. 2-9.) In his petition, Mattia alleged that his trial counsel failed to: (1) bring out, at the Huntley hearing, petitioner's methadone addiction or call witnesses to corroborate the alleged police assault on petitioner; (2) conduct a comprehensive investigation to obtain defense witnesses for trial or investigate leads supplied by petitioner; (3) accept or return petitioner's phone calls or confer with petitioner prior to trial; (4) properly prepare for trial by visiting, photographing and familiarizing himself with the crime scene and surrounding area; (5) competently cross-examine the State's witnesses; (6) effectively utilize exhibits and photographs during the cross-examinations of the State's witnesses; (7) challenge the admission of the razor into evidence; (8) elicit testimony from the Medical Examiner that the victim was high on phencyclidine (PCP) at the time of his death; (9) obtain an intoxication charge; (10) digitally examine the 911 recording; and (11) rehabilitate petitioner through a redirect examination at trial. Petitioner also claims that (12) trial counsel attempted to extort money from his family.

Magistrate Judge Azrack recommended that Mattia's petition be denied in its entirety and that no certificate of appealability issue. She concluded that the claims that were first raised in Mattia's *pro se* supplemental brief on direct appeal–claims 2, 5, 6, 7 and 11 above–were procedurally barred from federal habeas review because they had been rejected on an independent and adequate state procedural ground. (R&R at 12-17.) She reached the merits of the remaining seven claims, and rejected each in turn. (R&R at 17-28.)

Mattia, through counsel, filed timely objections with regard to four of the seven claims on

which Magistrate Judge Azrack reached the merits. Specifically, Mattia argues that his trial counsel was constitutionally ineffective because he (1) performed inadequately at the Huntley hearing; (2) refused to accept Mattia's phone calls or otherwise confer with him; (3) failed to obtain an intoxication charge; and (4) attempted to extort money from Mattia's family (claims 1, 3, 9 and 12, above). Mattia asks this Court to reject the R&R on these grounds, or alternatively, to issue a certificate of appealability on these four issues. (Levenson Aff.[1] at 2-4.) Additionally, Mattia argues that the R&R contains "numerous misstatements of the record which would have resulted in a different conclusion if the correct facts were used as a basis for [Magistrate Judge Azrack's] conclusions." (Levenson Aff. at 1.) Mattia does not object to the R&R's statements of the applicable law, the remaining claims decided on the merits, or Magistrate Judge Azrack's conclusion that five of Mattia's claims are procedurally barred from federal habeas review.

II.  Discussion

A.  Legal Standards

Mattia objects to the disposition of four ineffective assistance of counsel claims in the R&R. Accordingly, the Court reviews these claims de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

1.  AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the state's adjudication of the claim "(1)

---

[1] "Levenson Aff." refers to the Affirmation of Leonard J. Levenson submitted on June 11, 2008.

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A state disposition can be "on the merits" despite the fact that the state court failed to cite the federal claim or relevant federal case law, or failed to provide any reasoning or explanation for its decision. See id. at 312-13.[2]

Under the AEDPA's "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Under this clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In order to grant the writ there must be

---

[2] The Second Circuit has noted that "federal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright line rule designed to effectuate such a standard in a particular context." Overton v. Newton, 295 F.3d 270, 278 (2d Cir. 2002) (citing cases).

"some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### 2. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides a criminal defendant with the right to the effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 684-86 (1984). This right to counsel exists "in order to protect the fundamental right to a fair trial." Id. at 684. As such, the Supreme Court has explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) that he suffered prejudice as a result of the deficient performance. See id. at 687-696; Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001); United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

To establish deficient performance, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," Strickland, 466 U.S. at 688. As the Strickland court explained, this standard is "highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (internal citation omitted).

To establish prejudice, a petitioner must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. In making this determination, the court looks to the "cumulative weight of error" to determine whether the prejudice "reache[s] the constitutional threshold." Lindstadt v. Keane, 293 F.3d 191, 202 (2d Cir. 2001). "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." Id. at 204; United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990).

As a general matter, actions or omissions that might be considered "sound trial strategy" do not rise to the level of constitutionally ineffective assistance. Strickland, 466 U.S. at 689. Strategic choices made after a thorough investigation of the facts are "virtually unchallengeable," while choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691.

Mattia bears the burden of establishing that he was afforded constitutionally ineffective assistance of counsel. The Second Circuit has observed that "[t]he standard of Strickland 'is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Lindstadt, 293 F.3d at 199). Moreover, Mattia's burden is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the [AEDPA]." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

### B. Mattia's Specific Objections

#### 1. The Huntley Hearing

Mattia objects to Magistrate Judge Azrack's determination that counsel's performance at the pre-trial Huntley hearing was not constitutionally deficient. In support of this claim, he cites two specific deficiencies: (1) that counsel should have inquired into the use of methadone withdrawal as a means of coercion by the police, and (2) that counsel failed to call witnesses to corroborate the alleged police assault on Mattia at the precinct.

Magistrate Judge Azrack recommended several bases on which this claim should be denied, finding that trial counsel undertook a "thorough, though fruitless, pretrial investigation based on the various leads supplied by petitioner," and that counsel "vigorously cross-examined" the police witnesses at the Huntley hearing regarding the circumstances surrounding Mattia's statements to the police and whether anyone else witnessed the interrogation. (R&R at 21-22.) The magistrate further noted that counsel prevailed on some issues at the Huntley hearing, in that the trial court found that the statements at the police station were obtained in violation of Miranda. Accordingly, the statements were not permitted in the People's direct case, but they could be used to impeach Mattia if he took the witness stand because the trial judge found the statements were not a result of coercion. (R&R at 22.) Finally, the magistrate concluded that trial counsel made a reasonable strategic decision to refrain from discussing Mattia's methadone addiction.

Mattia advances two specific objections to Judge Azrack's conclusions. First, he makes a somewhat conclusory assertion that counsel's failure to inquire into or investigate the use of methadone withdrawal as a means of coercion was "negligent." (Levenson Aff. at 7.) He argues

that there was no strategic basis to fail to pursue this theory because the Huntley hearing was held pre-trial, without a jury present. (Id.) This argument fails. As an initial matter, Mattia offers only conclusory assertions in the instant petition to support the proposition that he actually suffered from methadone withdrawal while he was at the police precinct, or even that counsel knew as much at the time of the Huntley hearing. He has not offered an affidavit and the record does not contain any other evidence that Mattia was, in fact, suffering from methadone withdrawal during his time at the police precinct. Mattia has not developed any factual basis for this claim in any state court proceedings below. The 440.10 Court found Mattia's motion to be "devoid of any documentation that [new leads, such as methadone withdrawal] were supplied or really meaningful." (440.10 Op. at 2.) Neither has Mattia submitted any additional evidence to this Court. Even had he done so, this Court would not be permitted on habeas review to evaluate new factual evidence on this claim. See 28 U.S.C. §§ 2254(e)(2)(A)(ii); 2254(e)(2)(B).

The record makes clear, however, that counsel's performance at the Huntley hearing was not constitutionally deficient. As noted by Magistrate Judge Azrack, counsel attempted to find corroborating witnesses to testify at the Huntley hearing, but they either could not be located or wanted no part of this case. (Voir Dire at 2-5; Sheinberg Aff. ¶ 10). Moreover, counsel zealously cross-examined the People's witnesses with respect to, *inter alia*, the voluntariness of petitioner's statements at the precinct, the detectives' alleged use of force and possible coercion (9/27/00 Hr'g Tr. at 58), the presence of possible witnesses to the alleged assault (Id. at 98-100), the existence of photographs or other documentation of Mattia's injuries (Id. at 58-62, 69-70, 100-101, 102, 104), whether petitioner requested a lawyer (Id. at 56, 90), and when Mattia received Miranda warnings (Id. at 42, 92). Counsel argued forcefully, and with some limited

success, for suppression of Mattia's statements. (Id. at 114-15, 119-20). The hearing court found the detectives to be credible and Mattia's statements to have been voluntary. (Id. at 128.) The judge observed that any of Mattia's statements made over the telephone were not governed by the rules of custodial interrogation and would therefore be admissible at trial. (Id. at 130.) With regard to Mattia's custodial statements, to which the People conceded no Miranda warnings were given, the judge permitted the statements to be used only for cross-examination purposes, finding that "there's absolutely no evidence that these statements were unreliable or based on duress or coercion." (Id. at 130-131.)

Mattia has also failed to meet the second prong of Strickland in that he has failed to show prejudice. In light of the substantial evidence of Mattia's guilt, counsel's failure at the Huntley hearing to establish coercion and preclude any use of his statements does not undermine confidence in the outcome of the proceedings. Mattia objects to Magistrate Judge Azrack's conclusion that "not one of the statements at issue was used at trial in any fashion, either as part of the State's direct case or during the cross-examination of petitioner." (R&R at 21.) Mattia argues that the statement is "erroneous" because the People's "cross examination was replete with statements made by Petitioner to the police" and "the People made frequent references in summation to statements Petitioner made to the police." (Levenson Aff. at 6.) As a result, Mattia claims that "[t]his erroneous understanding of the facts in this matter distorts an underlying premise of Magistrate Azrack's report," and argues that the District Attorney's use of these statements means that "trial counsel's failure to investigate allegations of coercion could no longer be assumed to be harmless." (Levenson Aff. at 6.) Although Mattia correctly notes that the statement in the R&R was incorrect, the error is of no consequence. First, several of the

statements introduced at trial, and to which Mattia now objects, were non-custodial statements made to the police over the phone and clearly admissible. For instance, the statement that Mattia's "car was stolen" was made voluntarily over the phone to Detective Giglio and therefore admissible at trial on direct or cross-examination. (9/27/00 Hr'g Tr. at 76, Tr. at 700, 832.) To the extent that other statements were elicited on cross-examination of Mattia, their admission does not undermine this Court's conclusion that counsel's failure to suppress these statements at the Huntley hearing did not cause prejudice to the defendant. These statements were not direct admissions of guilt, but rather were false exculpatory statements given to the police and used on cross to undermine Mattia's credibility. In light of the substantial evidence of Mattia's guilt presented at trial, including the testimony of two eyewitnesses, the use of several false exculpatory statements given to the police does not undermine the outcome of the proceedings. Accordingly, the 440.10 court's rejection of this claim was not an unreasonable application of Strickland.

### 2. Counsel's Pre-trial Communication with Mattia

Mattia also claims that counsel wilfully refused to accept his phone calls and otherwise confer with him before trial. (Levenson Aff. at 7-8.) In support of this claim, Mattia submits call logs indicating that counsel was unavailable to accept a large majority of Mattia's phone calls. Magistrate Judge Azrack concluded that Mattia was nonetheless afforded effective assistance of counsel because counsel "accepted petitioner's telephone calls when he was in his office and available to do so" and had him "produced for a number of visits in order to prepare for trial." (R&R at 23.) Mattia rehashes the data from the call logs in his objections, noting that counsel

only accepted six of his calls, while rejecting 45 collect calls[3] and 33 other calls, and does not deny that counsel consulted with Mattia on a number of occasions.

These facts establish neither deficient performance nor prejudice within the meaning of Strickland. As Magistrate Judge Azrack noted, the record reflects the fact that counsel adequately consulted with Mattia, both on the phone and at face-to-face meetings. (R&R at 23; Sheinberg Aff. ¶ 8.) In addition, counsel states in his affidavit that the private investigator that he retained consulted with Mattia in preparation for trial. (Sheinberg Aff. ¶ 10.) Moreover, while counsel was often unavailable to receive one of Mattia's many calls, the call log data cited by Mattia is somewhat misleading. On several dates, Mattia made multiple calls in rapid succession–16 on one day and 7 another, as well as four other dates on which more than one call was made. The calls on those dates are counted individually in Mattia's petition and objections, despite the fact that subsequent calls on a given day were more likely to go unanswered since counsel was plainly unavailable for at least part of those days. Mattia does not argue that further consultation with counsel could conceivably have altered the outcome of his trial, and no evidence suggests that it would have. Accordingly, the 440.10 court's rejection of these claims was not an unreasonable application of Strickland.

### 3. Failure to Request an Intoxication Charge

Mattia also objects on the ground that counsel was constitutionally ineffective for having failed to request an intoxication charge. Magistrate Judge Azrack concluded that the trial record did not provide a sufficient basis to support such a charge, and therefore that it was not error for

---

[3] The respondents note that counsel's office, as a matter of policy, did not accept collect calls from a client when counsel was not available to speak with them.

counsel to forgo doing so. (R&R at 25.) In his objections, Mattia argues that counsel's failure to request the charge stemmed from laziness, and argues that certain statements of the trial judge at sentencing about Mattia's drug use indicate that an intoxication charge should have been requested. (Levenson Aff. at 10-11.)

As an initial matter, the Court notes that Mattia did not raise any argument about the trial judge's comments at sentencing before the Magistrate Judge. It is improper to raise arguments in objections to an R&R that were not previously raised with the Magistrate Judge. In any event, the claim is without merit. In New York, "a charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain doubt as to the element of intent on that basis." People v. Rodriguez, 76 N.Y.2d 918, 920 (1990). Under this standard, the inquiry is not whether the defendant was under the influence of drugs or alcohol, but rather whether or not drugs and alcohol had the effect of interfering with the defendant's ability to form the culpable mental state necessary for commission of the crime. See People v. Aronsen, 204 A.D.2d 470, 471 (2d Dep't 1994). In this case, Mattia did not testify that he had used drugs on the night of the crime and only admitted to using PCP occasionally and in moderation to ease pain from his carpal tunnel syndrome. (Tr. at 655.) Nowhere does the trial record, including Mattia's own testimony on direct and cross-examination, indicate that Mattia's mental state was impaired that evening. Such a claim is further belied by the fact that Mattia was able to drive away from the scene of the crime and then had the presence of mind to abandon the van and lie to the police upon his arrest. It was not constitutionally ineffective for counsel to refrain from requesting an intoxication charge where counsel made the reasonable strategic decision to defend the case, not on lack of intent, but on Mattia's claim that he was not a

participant in the offense. Accordingly, the 440.10 court's rejection of this claim was not an unreasonable application of <u>Strickland</u>.

### 4. Extortion of Money from Mattia's Family

Finally, Mattia argues that counsel attempted to extort money from his family. The argument in support of this claim is unclear,[4] but Mattia appears to allege that counsel refused to zealously defend Mattia unless he was paid additional funds by Mattia's family. Magistrate Judge Azrack concluded that the allegations were entirely implausible, noting counsel's good standing, the fact that public money paid for his representation and could have provided additional funds for further investigation, and that this accusation did not surface until seven years after the extortion was alleged to have occurred. Mattia's objections to the Magistrate's conclusions lack merit. The Court agrees that Mattia has failed to develop facts to establish that counsel ever attempted to extort money from Mattia's family; he has provided only unsupported assertions that are palpably incredible on their face. As the 440.10 court noted, the affidavits provided in support of this claim state only that Mattia's parents were told that the investigator assigned by the State "would be able to do a complete and thorough investigation for 'additional money' presumably from [Mattia] or his family," and the "'presumption' in the affidavits is not a fact." (440.10 Op. at 2.) Even if the allegations were true, Mattia has failed to establish that counsel performed deficiently at trial and any alleged demand for money, even if it occurred, did not prejudice Mattia's defense. Accordingly, the 440.10 court's rejection of this claim was not an unreasonable application of <u>Strickland</u>.

---

[4]In fact, considering that Mattia brought the instant petition through counsel, the respondents and Magistrate Judge Azrack interpreted it charitably when they choose to assume this claim was being raised.

For all of the foregoing reasons, Mattia's objections to Magistrate Judge Azrack's R&R lack merit. Accordingly, his claims that counsel (1) incompetently represented him during the Huntley hearing, (2) refused to accept phone calls or communicate prior to trial, (3) failed to request an intoxication charge, and (4) attempted to extort money from Mattia's family, are denied.

### C. The Remaining Claims

Mattia has not objected to Magistrate Judge Azrack's recommendation with respect to his remaining claims and has therefore waived any further judicial review. "Federal Rule of Civil Procedure 72 requires a party objecting to a magistrate judge's recommended ruling to 'serve and file specific, written objections to the proposed findings and recommendations'" within the time period provided by the rule. Federal Deposit Ins. Corp. v. Hillcrest Assocs., 66 F.3d 566, 569 (2d Cir. 1995) (quoting Fed. R. Civ. P. 72 and citing 28 U.S.C. § 636(b)(1)). As Mattia has not filed specific objections with regard to any of the remaining claims decided by Magistrate Judge Azrack, the Court does not review them here. See 28 U.S.C. 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (further review of Title VII claim waived where objections failed to adequately discuss that claim).

## III. Conclusion

For all of the foregoing reasons, Mattia's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The clerk of the court is directed to enter judgment and to close this case.

SO ORDERED
Dated: Brooklyn, New York
November 9, 2009

/S/
Carol Bagley Amon
United States District Judge